IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

RAUL MATA,

      Petitioner,

  v.

CONNIE GIPSON, Warden,

      Respondent.

═══════════════════════/

No. C 12-5852 CW (PR)

ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS; DENYING
CERTIFICATE OF
APPEALABILITY

Petitioner Raul Mata, a California prisoner proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his state conviction, in which he asserts four cognizable claims: (1) incomplete and confusing answers to jury questions; (2) prosecutorial misconduct; (3) ineffective assistance of counsel; and (4) cumulative effect of multiple constitutional errors.  Respondent filed an answer and a memorandum of points and authorities in support thereof. Petitioner filed a traverse.  For the reasons stated below, the Court DENIES the petition.

BACKGROUND

I.  Procedural History

The Santa Clara County District Attorney filed an information charging Petitioner and his co-defendant, Orlando Creswell, jointly with count one, robbery in concert of an inhabited place. Court Transcript (CT) 151.  The district attorney charged Petitioner individually with count two, forcible sexual penetration; count three, sexual battery; count four, robbery in

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

an inhabited building; count five, burglary with a person present; and count six, making terrorist threats.   Id.

On October 30, 2009, a jury found Petitioner guilty on counts one, three, and five and not guilty on count four.  CT 369-77. The jury was unable to reach a verdict on counts two and six. CT 371, 378.

On March 12, 2010, the trial court sentenced Petitioner to a term of seventy-five years to life with a consecutive sentence of twenty-one years.  Ex. F at 1; People v. Mata, 2011 Cal. App. Unpub. LEXIS 6272 (Cal. Ct. App. Aug. 19, 2011).

On August 19, 2011, in a written opinion, the California Court of Appeal affirmed Petitioner's convictions and those of his co-defendant, but remanded the co-defendant's case for resentencing.  Ex. F at 32.

On September 28, 2011, Petitioner filed a petition for review in the California Supreme Court, which was summarily denied on November 16, 2011.  Ex. H, I.

On December 26, 2012, Petitioner filed the instant petition.

II. Statement of Facts

The following is a summary of the key facts taken from the written opinion of the California Court of Appeal.  Ex. F at 4-10.

In April 2008, the victim lived and worked on Clearview Drive in San Jose where she was self-employed as a masseuse.[1]  The

_____

[1] In the interest of confidentiality, the California Court of Appeal referred to the two victims as "victim one" and "victim two."  This Court will refer to victim one as "the victim." Petitioner was not involved in any offenses against victim two.

victim advertised her services in a local newspaper and on several internet websites.  Ex. F at 4.

At approximately 4:00 p.m. on April 29, 2008, the victim heard a knock at her door.  Two men were at the door.  Later, the victim identified them as Petitioner and Creswell.  Petitioner asked if there were two girls inside and, when the victim answered, "No," Petitioner and Creswell left.  Id.

Two hours later, the victim heard another knock at her door.  Through a small window, the victim saw that Petitioner and Creswell had returned.  The victim opened the door slightly and said that only one person could enter, but both men forced their way inside.  The victim tried to escape, but she fell outside the front door.  While Petitioner and Creswell dragged her back inside, a third man entered the home.  Id.

Petitioner forced the victim into the kitchen.  He knelt on top of her holding her face to the floor and demanded money while brandishing a box cutter.  The victim broke free and ran to her garage, but Petitioner grabbed her and pulled her back into the house where he struck her several times across the face with a closed fist.  Id.

The three confederates dragged the victim into her bedroom where Petitioner and Creswell tied her hands and feet with computer cords.  Creswell and the third man left the room while Petitioner remained with the victim.  Petitioner proceeded to press the victim's face down on the bed, then pulled down her underpants and inserted a finger on or in her rectum.  Petitioner and Creswell then dragged the victim into the master bedroom,

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

closed the door, and left her alone.  The victim broke free and called her husband from the phone in the bedroom.  Id. at 5.

As the victim proceeded downstairs, she saw Petitioner in her living room, heard Creswell call out to him and then saw them exit through the front door.  The victim ran outside and saw the three men enter a vehicle, with the third man in the driver's seat.  The victim screamed as the car drove away and chased it on foot, but was unable to see the license plate number.  Id.

Police officers responded to the scene and observed that every room in the victim's home had been ransacked and that the victim had suffered injuries to her face and arms.  The robbers had taken items worth more than $20,000 from the victim's house. Id.

After this incident, the victim moved to a residence on Hostetter Road in San Jose.  She remained a self-employed masseuse.  Id. at 6.

On July 7, 2008, the victim received three phone calls asking for her new address and the price of a massage.  The victim provided the price of a massage but, instead of her address, indicated an intersection close to her residence, with instructions to call when they reached the intersection.  At 4:00 p.m. the victim received a phone call from a customer who said he was at the designated intersection.  The victim provided her home address.  Id.

At approximately 6:00 p.m., the victim heard a knock at the door.  The victim looked through the peephole, saw Petitioner and recognized him as the man who had robbed and sexually assaulted her on April 29, 2008.  She thought he was there to rob her again.

4

**United States District Court**
For the Northern District of California

Because he appeared to be alone, the victim decided she would try to catch him before he could rob her a second time. She unlocked the door and started to open it. Petitioner immediately pushed his way inside, but the victim was able to run past him. Petitioner attempted to restrain the victim, but she ran towards the street screaming for help. Petitioner gave chase as the victim screamed. Petitioner eventually passed the victim and began to run along Hostetter Road toward Capitol Avenue, with the victim now chasing him, still screaming for help. Id. at 6-7.

Several bystanders joined the chase and cornered Petitioner at a nearby gas station. When the victim arrived, she informed the bystanders that Petitioner was a robber and asked someone to call the police. Id. at 7.

Investigating San Jose Police Officer Keith Mizuhara discovered that Petitioner and Creswell worked at the same floor installation business in Santa Clara. Records for Creswell's cell phone revealed that he had received a call at approximately 6:30 p.m. on April 29, 2008, when he was near the victim's Clearview Drive residence. Id. at 9.

Petitioner and Creswell were tried jointly. Petitioner did not testify, but Creswell did. Creswell testified that his working hours in April and July 2008 were 7:30 a.m. to 5:30 p.m., and that he carried tools on the job, including a box cutter. Id. Creswell testified that, on the morning of April 29, 2008, he worked at the company's warehouse and, in the afternoon, he worked at a stocking job in Palo Alto. Petitioner did not work on these jobs with him. Creswell testified that, when he received the incoming call on his cell phone at 6:30 p.m., he was near the

Berryessa Flea Market.  He explained that it was merely a coincidence that he happened to be close to the victim's house where she had been robbed ten minutes earlier.  Creswell denied entering the victim's residence and said he had never seen her before the trial.  Id. at 9-10.

LEGAL STANDARD

A federal court may entertain a habeas petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Under the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, a district court may not grant habeas relief unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412 (2000).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Id. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the

**United States District Court**
For the Northern District of California

Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

A federal court on habeas review may not issue a writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. Id. at 409.  The factual determinations by state courts are presumed correct unless there is "clear and convincing evidence to the contrary." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state court judgment was erroneous under the standard of § 2254(d).  Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991).  In the present case, the California Court of Appeal is the highest court that addressed Petitioner's claims in a reasoned opinion.

                              DISCUSSION

I.   Trial Court's Answers to Jury Questions

Petitioner argues the trial court's incomplete and confusing answers to the jury's questions violated his rights to due process and a fair trial.

     A. Factual Background

The prosecution and defense stipulated, as to count one, that the persons who entered the victim's home on Clearview Drive on April 29, 2008, intended to rob her.  Ex. F at 22.  As to count five, the parties stipulated that the person who entered the

7

victim's home on Hostetter Road on July 7, 2008, intended to burglarize the home.  Id.

On the second day of deliberations, the jury sent the following question to the trial court: "We need clarification on the stipulation about intent.  Does the stipulation imply or implicitly or explicitly state that these defendants had the intent to burglarize and rob the victims?  In other words, could 'intent' be implied to someone else besides the defendants." Reporter's Transcript (RT) at 886.  The trial court brought the jurors into the courtroom and asked that they clarify their question to determine if they were asking two separate questions and if the second part of the question may have referred to uncharged participants or to the defendants.  Id.

The jury returned a note asking for reinstruction on "what a stipulation is and how to use it?" RT at 887.  The jury also asked if stipulations were facts.  Id.  The trial court responded by summarizing the fifth paragraph of CALCRIM No. 222: "During the trial, you were told that the People, that's the DA there and the defense, the other parties here agreed or stipulated to certain facts.  This means that they all three accept those facts as true because there is no dispute about those facts.  You must also accept them as true." Id.

Juror No. 2 then informed the court that she felt uncomfortable because the other jurors made condescending remarks about her. RT at 888.  She said that she had asked the questions about stipulations and that the other jurors laughed at her and questioned her intelligence.  Id.  When the trial court spoke to

**United States District Court**
For the Northern District of California

the jury as a whole, it advised the jurors to speak to one another with courtesy.  RT at 895.

The following day, Juror No. 2 again spoke individually to the court and reported that tensions in the jury room were heated. She stated that the other jurors "just want to go ahead and vote and convict and get it over with and I have questions . . . and I believe I've had enough."  RT at 897-98.  Juror No. 2 said the other jurors were preventing her from asking questions and that they believed the defendants had admitted to guilt because their attorneys agreed to the stipulations.  RT at 898.

The court brought out the jurors and asked them to formulate a question about the stipulations to eliminate any remaining confusion.  RT at 904-05.

After the jury left, Juror No. 2 returned and asked to speak to the court again.  RT at 905.  Weeping, Juror No. 2 told the court that when she wrote a question and read it to the jurors, they responded in laughter and one juror said "Are you fucking serious?  You don't fucking get it."  RT at 906.  The court ordered the jury to return to the courtroom and read the question Juror No. 2 had formulated.  RT at 907-8.  The question read: "Is the stipulation stating that the attorney's [sic] agreed on the count's [sic] that the defendants committed the crime.  If the defendant entered the building, is it automatic that he was there to commit robbery?  On Count 5 for Mata, as its [sic] stipulates." RT at 908.

The court responded that the first question was too general because the defendants were charged with different crimes in different counts.  RT at 908-09.  The court changed the word

"robbery" in the second question to burglary, since that was the charge in count five.  RT at 908.  The court then answered the question as follows: "To prove the defendant guilty, is guilty of this crime, the People must prove two things.  One, that the defendant and it's Defendant charged in this case, we're not talking about Mr. Creswell, entered the home of [the victim] on Hostetter on 7-7-08 beyond a reasonable doubt.  And, when he entered the home, he entered with the intent to commit theft.  The second one is stipulated to, that whoever entered the home, entered with the intent to commit theft.  So, there is only one element that you have to find in order to find Defendant guilty beyond a reasonable doubt.  You'd have to find that the People have proven Defendant entered the home of [the victim] on Hostetter on 7-7-08."  RT at 909.

A juror sent the court another question: "Define burglary. Could Defendant have been there for some other reason?  Are the attorneys agreeing he was there to [sic] with intent to commit robbery?  We believe he was there with her but for a masage [sic] (sex)."  RT at 910-11.  The court consulted with counsel and responded that believing Petitioner was there for a massage was invalid because the parties had stipulated that the person who entered intended to commit theft.  RT at 911-12.  Due to that stipulation, the prosecution only had to prove beyond a reasonable doubt that Petitioner entered the victim's home on July 7, 2008. RT at 912.  The Court again instructed the jury to treat each other courteously and use appropriate language when speaking to one another.  RT at 914.

B. California Court of Appeal Opinion

The California Court of Appeal rejected this claim as follows:

> The court did not err in answering the jury's questions.  Section 1138 provides that if the jury "desire[s] to be informed on any point of law arising in the case . . . the information required must be given." . . .

> Mata's first contention is that the trial court "never directly answered the jury's question[s]."  He claims the gist of the questions submitted by the jury reflected their confusion about whether the stipulations meant defense counsel had conceded their clients' guilt or had merely conceded whoever committed the crimes had the requisite intent.

> Contrary to Mata's characterization, the record shows the court considered the jury's questions, and properly answered them, fulfilling its duty under section 1138.  The jury's first question sought clarification regarding the stipulations about the element of intent.  The court asked the jury to refine its initial question, which it did by asking for reinstruction on what a stipulation is and how it could be used, as well as asking if stipulations are "facts?"  The court answered the reformulated question by summarizing the relevant paragraph of CALCRIM No. 222.  The court's answer properly, and thoroughly explained the legal effect of a stipulation.

> When the jury came back with yet another question regarding the effect of the stipulation as it related to count 5, the court explained the stipulation meant the prosecution only had to prove that Mata entered the victim's home, not that he entered with the intent to commit theft.  Again, this was a correct statement of the law.

> Finally, the jury asked if the stipulation invalidated its belief that Mata may have entered the home simply to get a massage from (or have sex with) victim 1.  In response, the court said the stipulation negated that belief because the parties had conceded whoever entered the home on that date did so with the intent to commit theft, not for any other purpose.  This answer was a proper, correct statement of the law.

> Mata's second contention is that the trial court, in one of its responses to the jury, suggested the stipulation applied to both elements of the offense, rather than just the intent element.  After stating the prosecution had to prove two things, the court

said it first had to prove Mata entered victim 1's home, but then said "And when he entered the home he entered with the intent to commit theft."  Mata claims that this statement makes the assumption that Mata did in fact enter victim 1's home, and the court's subsequent clarification that the stipulation was that "whoever entered the home, entered with the intent to commit theft" only added to the jury's confusion.

We disagree.  The court's remark, which followed immediately after its statement that the prosecution had to prove Mata entered victim 1's home, does imply a presumption that the prosecution proved that element.  However, the court subsequently explained to the jury that only the second element, that of intent, had been stipulated to by counsel and reiterated the prosecution had to prove it was Mata, as opposed to someone else, who entered victim 1's home.  Any potential confusion was thus immediately remedied.

Furthermore, if the trial court's responses to the jury's questions acted, as Mata contends, to reduce or eliminate the prosecution's burden of proof, why did the jury find Mata not guilty on count 4?  Count 4 was the subject of a nearly identical stipulation regarding intent, and if the jury had been misled into thinking the stipulation meant that Mata was conceding his guilt on all the theft charges, it should have convicted him on count 4, as well.  Instead the jury acquitted him on that charge.  It seems clear the trial court's responses to the juror's inquiries were sufficient to resolve their initial misunderstandings and allowed them to properly apply the stipulations in their deliberations.

Ex. F at 25-27.

C. Federal Authority

The trial judge has a duty to respond to the jury's request for clarification with sufficient specificity to eliminate the jury's confusion.  Beardslee v. Woodford, 358 F.3d 560, 574-75 (9th Cir. 2004) (citing Bollenbach v. United States, 326 U.S. 607, 612-13 (1946)).  The trial judge has wide discretion in charging the jury, a discretion which carries over to the judge's responses to questions from the jury.  Arizona v. Johnson, 351 F.3d 988, 994 (9th Cir. 2003).

When a trial judge responds to a jury question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, and the jury asks no follow-up question, a reviewing court may "presume[] that the jury fully understood the judge's answer and appropriately applied the jury instruction." Waddington v. Sarausad, 555 U.S. 179, 196 (2009).  Just as a jury is presumed to follow its instructions, it is presumed to understand a judge's answer to a question. Weeks v. Angelone, 528 U.S. 225, 234 (2000).

To obtain habeas relief following an allegedly erroneous response to a jury's request for clarification, a petitioner must show: (1) the response was an incorrect or an inaccurate application of state law, (2) constitutional error resulted, and (3) the error was not harmless. Morris v. Woodford, 273 F.3d 826, 833 (9th Cir. 2001).

D. Analysis

Petitioner fails to show that the trial court's response to the jury was unconstitutional.  First, when the jury indicated it was confused about the meaning of a stipulation, the trial court re-instructed with CALCRIM No. 222, which told the jury that it must accept as true the facts to which the parties had stipulated. The Court of Appeal's determination that this was a proper explanation of the legal effect of a stipulation must be accepted on federal habeas review.  See Hicks v. Feiock, 485 U.S. 624, 629-30 (1988) (federal court must accept state court's interpretation of state law).

Second, when the jury indicated it was unsure of which facts were to be taken as true, the trial court clarified that only two

elements were required to prove that Petitioner committed burglary: (1) that Petitioner was the person who entered the victim's home and (2) that the person who entered had the intent to commit theft.  The trial court clarified that the jury had to take the second element as true because the parties had stipulated to it and that the jury only had to determine if the person who entered the victim's home was Petitioner.  Again, this Court must accept the Court of Appeal's determination that this was a correct statement of the law of burglary.  See id.  The trial court's explanation of how the parties' stipulation affected what the jury had to find was also correct.  Thus, the trial court's answers to the jury's questions were not erroneous.

Petitioner argues that the trial court's reply suggested that the stipulation applied to both elements of the offense rather than only to the intent element.  Petitioner concludes that the trial court implied that Petitioner agreed that he entered the victim's home on July 7, 2008 and, therefore, the stipulation was an admission of his guilt.

The trial court's first statement may have implied that the prosecution did not have to prove that Petitioner entered the victim's home.  However, as pointed out by the Court of Appeal, any confusion was remedied by the trial court's second statement that the parties had stipulated only to the element of intent, and that the prosecution must prove that Petitioner had entered the victim's home.

Accordingly, the Court of Appeal's denial of this claim was not objectively unreasonable.

14

Petitioner asserts a new claim in his traverse that, but for the trial court's incomplete and confusing answers, the jury would not have disrespected Juror No. 2 and forced her to vote for a guilty verdict.  Traverse at 8-9.

A traverse is not the proper pleading to raise additional grounds for relief.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (additional claims must be presented in an amended petition so that respondent has an opportunity to respond).  For this reason alone, this claim must be denied.  Furthermore, it appears that this claim is unexhausted because Petitioner did not raise it in his direct appeal to the California Court of Appeal or the California Supreme Court.  A federal court may not grant an unexhausted claim but may deny it on the merits where "it is perfectly clear that the applicant does not raise even a colorable claim." Granberry v. Greer, 481 U.S. 129, 135 (1987).

On the merits, the claim is denied because it does not raise colorable grounds for relief.  Contrary to Petitioner's argument, the trial court correctly responded to each of the jury's inquiries regarding stipulations.  RT at 908-09, 911-12.  The trial court also appropriately responded to Juror No. 2's claim that the jurors disrespected her by twice instructing the jurors to speak to one another with courtesy.  RT at 895, 914.  Therefore, the trial court's actions did not contribute to Juror No. 2's claim that the other jurors did not respect her.

Furthermore, Petitioner only speculates that Juror No. 2 voted to convict him as a result of duress from other jurors.  As discussed above, the jury acquitted Petitioner on count four, and

United States District Court
For the Northern District of California

failed to reach a verdict on counts two and six.  This shows that the other jurors did not force Juror No. 2 to find Petitioner guilty where the evidence did not warrant such a finding.

Accordingly, Petitioner is not entitled to habeas relief on this claim.

## II. Prosecutorial Misconduct

Petitioner argues the prosecution's improper cross-examination of Creswell violated Petitioner's due process rights because it suggested that Petitioner had the burden to introduce evidence to prove his innocence.

A. Factual Background

During cross-examination, the prosecutor asked Creswell if he had asked his employer for copies of his work schedule and job assignments for April 29, 2008 in order to verify his whereabouts at the time of the first robbery.  The following exchange occurred between the prosecutor and Creswell:

Q. You're asking this jury to believe everything you're saying because you're saying it?

A. Yes.

[Defense counsel]: Objection.  Argumentative.

THE COURT: Sustained.

Q. (By [district attorney]): You have nothing to support what it is you're testifying to; isn't that correct?

[Defense counsel]: Objection.  Argumentative.

THE COURT: Why don't you rephrase.

Q. (By [district attorney]): Do you have any documents, any proof other than what you assert in People's exhibit 28 and 23 which are you[r] cell phone records, to verify you were where you say you were on those days?

A. I believe I do, sir.

Q. Well, what are they?  What records do you have?

16

A. There is a work schedule of me that--of [defense counsel] has that shows--

Q. No. I'm asking you, have you presented anything, not what you supposedly gave your counsel, I don't want to get into that.  Do you have anything to present to this jury?

A. I'm incarcerated so no, I can't produce anything.

Q. Well, you have the right to subpoena, don't you?

A. Yes, I do have the right to subpoena but my lawyer--

Q. Have you ever requested a subpoena be provided to Mr. Keenan regarding records from those days?

A. No, I did not sir.

RT at 719.

B. California Court of Appeal Opinion

The California Court of Appeal rejected this claim as follows:

> Defense counsel did not raise the issue of prosecutorial misconduct below and has thus forfeited the claim. . . . Had the issue been raised below, the trial court could have admonished the jury to disregard the questioning and the implication that the defense had the burden of proof.
>
> . . .
>
> However, even if the claim were not forfeited, [Petitioner] cannot establish prejudice.  Based on the totality of the evidence presented at trial, consisting of [the victim]'s direct testimony about [Petitioner] and Creswell assaulting her and burglarizing her home, as well as [the victim]'s testimony about her second encounter with [Petitioner] on July 7, 2008, when he attempted to burglarize her new home, it is not reasonably probable [Petitioner] would have been acquitted if the prosecution had not asked Creswell questions about his work schedule for April 29, 2008.

Ex. F at 18, 28.

C. Federal Authority

On a claim of prosecutorial misconduct, federal habeas relief is only justified if the prosecutor's comments have "so infected the trial with unfairness as to make the resulting conviction a

17

denial of due process." <u>Darden v. Wainwright</u>, 447 U.S. 168, 181 (1986)(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974)). In cases of alleged prosecutorial misconduct, the due process analysis is focused on "the fairness of the trial, not the culpability of the prosecutor." <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).

Under <u>Darden</u>, the factors which a court may take into account in determining whether misconduct rises to the level of a due process violation are (1) the weight of evidence of guilt, (2) whether the misconduct was isolated or part of an ongoing pattern, (3) whether the misconduct relates to a critical part of the case, and (4) whether a prosecutor's comment misstates or manipulates the evidence. <u>Darden</u>, 477 U.S. at 182.

Additionally, under AEDPA, a federal habeas court examines only whether the state court's application of these principles was unreasonable. <u>Brown v. Payton</u>, 544 U.S. 133, 143 (2005).

D. Analysis

Defense counsel's failure to object at trial procedurally bars habeas review of this claim. <u>See</u> <u>Rich v. Calderon</u>, 187 F.3d 1064, 1070 (9th Cir. 1999) (a habeas court may not review a prosecutorial misconduct claim when a party procedurally defaults by failing to make contemporaneous objections at trial). However, even on the merits, the claim fails because none of the <u>Darden</u> factors supports relief.

The first <u>Darden</u> factor is not met because the prosecutor's case against Petitioner was strong. The jury heard the victim's testimony that Petitioner and Creswell assaulted her and burglarized her in her home on Clearview Drive. RT 146. The

18

victim testified that she recognized Petitioner when he attempted to rob her a second time in her new home on Hostetter Road.  RT 397.  Finally, Petitioner was apprehended just after the second robbery.  RT 413.  These facts provide strong evidence of Petitioner's guilt.

The second Darden factor is not satisfied because the prosecution's challenged conduct was isolated and not part of an ongoing pattern.  The third Darden factor is not met because Petitioner does not show how the prosecution's questions to Creswell had a significant impact on Petitioner's case.  Finally, the prosecution did not misstate or manipulate any evidence when cross-examining Creswell.

Furthermore, the trial court instructed the jury that neither party was required to produce all the evidence relevant to the case.  CT 130.  The trial court also gave correct instructions on the burden of proof and reasonable doubt.  CT 305, 307.  See Image Tech. Servs. v. Eastman Kodak Co., 125 F.3d 1195, 1213 (9th Cir. 1997) (courts presume a jury follows instructions it is given).  These instructions remedied any possible confusion about the burden of proof that may have been caused by the prosecution's questioning of Creswell.

For all these reasons, the prosecutor's challenged questions to Creswell did not constitute misconduct.  The Court of Appeal's denial of this claim was not objectively unreasonable.

III. Ineffective Assistance of Counsel

Petitioner argues that, if his claims are procedurally defaulted due to his counsel's failure to object below, his counsel provided ineffective assistance.

**United States District Court**
For the Northern District of California

1

A. California Court of Appeal Opinion

2

The California Court of Appeal rejected this claim as

3

follows:

4
5
6

    . . . there is no merit to Mata's claim that the trial
    court's responses confused or misled the jury in any
    way, and thus any such objection by his counsel would
    have been fruitless.

7

    . . .

8
9
10

    As for his claim of ineffective assistance of counsel,
    that contention is also without merit because we have
    found that, even if objections had been raised below
    to any of the supposed misconduct or error, those
    objections would have been unfounded.  Accordingly,
    counsel was not ineffective for failing to make
    frivolous objections.

11

Ex. F at 27-28.

12

B. Federal Authority

13

A claim of ineffective assistance of counsel is cognizable as

14

a claim of denial of the Sixth Amendment right to counsel, which

15

guarantees not only assistance, but effective assistance of

16

counsel.  Strickland v. Washington, 466 U.S. 668, 686 (1984).  The

17

benchmark for judging any claim of ineffectiveness must be whether

18

counsel's conduct so undermined the proper functioning of the

19

adversarial process that the trial cannot be relied upon as having

20

produced a just result.  Id.

21

First, the petitioner must show that counsel's performance

22

was deficient.  Id. at 687.  This requires showing that counsel

23

made errors so serious that counsel was not functioning as the

24

"counsel" guaranteed by the Sixth Amendment.  Id.  Judicial

25

scrutiny of counsel's performance must be highly deferential, and

26

a court must indulge a strong presumption that counsel's conduct

27
28

**United States District Court**
For the Northern District of California

falls within the wide range of reasonable professional assistance. Id. at 689.

Second, the petitioner must show that counsel's errors were so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable. Id. at 688.  The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. at 694.

C. Analysis

The California Court of Appeal reasonably concluded that this claim fails because there was no basis for defense counsel to object to the trial court's responses to the jury's questions or to the prosecution's cross-examination of Creswell.  As discussed above, the trial court's responses to the jury's questions were correct and did not confuse or mislead the jury and the prosecution did not commit misconduct.  Thus, defense counsel's failure to object does not constitute deficient performance.  See Juan H. v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005) (counsel cannot be ineffective for failing to raise a meritless objection).

Accordingly, the California Court of Appeal's denial of this claim was not objectively unreasonable.

IV. Cumulative Effect of Errors

Petitioner's final claim is that the cumulative effect of the alleged constitutional errors violated his constitutional right to due process and a fair trial.

Petitioner did not raise this claim in his appeals to the state courts; therefore, it is unexhausted.  A federal court may

deny an unexhausted claim on the merits where "it is perfectly clear that the applicant does not raise even a colorable claim." See Granberry, 481 U.S. at 135.

In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  Payton v. Woodford, 299 F.3d 815, 829 n.11 (9th Cir. 2002).  Where no single constitutional error exists, nothing can accumulate to the level of a constitutional violation. Hayes v. Ayers, 632 F.3d 500, 524 (9th Cir. 2011).

As discussed above, no constitutional errors were made during Petitioner's trial.  Therefore, no errors could accumulate to the level of a constitutional violation.  Thus, this claim is denied because Petitioner has not raised even a colorable claim for relief.

V. Request for Evidentiary Hearing

Petitioner requests an evidentiary hearing on his claims pertaining to the trial court's answers to the jury questions and prosecutorial misconduct, but fails to indicate what evidence he would present at such a hearing.  Petitioner is entitled to an evidentiary hearing on disputed facts where his allegations, if proven, would entitle him to relief.  Perez v. Rosario, 459 F.3d 943, 954 n.5 (9th Cir. 2006); Williams v. Calderon, 52 F.3d 1465, 1484 (9th Cir. 1995).  Petitioner is not entitled to an evidentiary hearing because he has failed to present any allegations which, if proven, would entitle him to relief.

**United States District Court**

For the Northern District of California

CONCLUSION

For the foregoing reasons, the request for an evidentiary hearing and petition for a writ of habeas corpus are DENIED.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition).  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong.  See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

The Clerk shall enter judgment and close the file.

IT IS SO ORDERED.


Dated:   _____7/25/2014_____            _____

                                        CLAUDIA WILKEN

                                        United States District Judge